IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| SKECHERS U.S.A., INC. II, | |
| Plaintiff, | Case No.: 1:24-cv-00596 |
| v. | Judge Jeremy C. Daniel |
| THE PARTNERSHIPS AND UNINCORPORATED ASSOCIATIONS IDENTIFIED ON SCHEDULE "A", | Magistrate Judge Jeffrey Cole |
| Defendants. | |

**PLAINTIFF'S RESPONSE IN OPPOSITION TO
DEFENDANTS' MOTION TO DISMISS [71]**

This Court should deny Defendant No. 1 Shenzhen Jiuan Yunchen Network Technology Co., Ltd., et al.'s[1] (the "Defendants") Motion to Dismiss [71] ("Defendants' Motion") because Defendants come before this Court with unclean hands, seeking equitable relief under Fed. R. Civ. P. 65 while engaging in systematic deception and concealment. Having built their entire business model on counterfeiting, fraud, and deliberate misrepresentations, Defendants cannot now seek the Court's equitable powers to modify the asset restraint. Jurisdictional discovery has exposed not only the misleading nature of Defendants' jurisdictional arguments but also their pattern of deception that makes them unworthy of equitable relief. Rather than providing full and accurate disclosures to this Court, Defendants have systematically attempted to shield their contacts with Illinois and the United States by revealing only what Plaintiff has already uncovered while concealing the true scope of their counterfeiting operations.

---

[1] Defendant No. 1 Shenzhen Jiuan Yunchen Network Technology Co., Ltd. (owner and operator of anticipateh.com) ("Jiuan"), Nos. 6 and 12 Giske Network Technology Co., Limited (owner and operator of cafeteriam.com and haulinferen.com) ("Giske"), No. 14 Justen Trading Co., Limited (owner and operator of implicationi.com) ("Justen"), No. 95 Shenzhen Huipeng Network Technology Co., Ltd. (owner and operator of localityi.com) ("Huipeng"), No. 100 Amgo Technology Co., Limited (owner and operator of moissture.com) ("Amgo"), and No. 101 Shenzhen Jiangmao Network Technology Co., Ltd. (owner and operator of signifye.com) ("Jiangmao").

**BACKGROUND AND INTRODUCTION**

Far from being independent operators with minimal U.S. presence, as claimed in their declarations, Defendants run a coordinated network that deliberately targets U.S. consumers through deceptive advertising. Their fake SKECHERS ads on Facebook feature English-language descriptions, U.S. dollar pricing, and false medical claims to lure U.S. consumers. *See* **Exhibit 1**. Defendants collectively spend millions on this U.S.-targeted advertising – with individual defendants admitting to budgets of $5-6 million in 2024 alone. *See* **Exhibit 2** (Rule 30(b)(6) Dep. of Giske, 20:6-10 (Dec. 4, 2024)).

 

The Court's grant of jurisdictional discovery proved crucial, exposing key examples of Defendants' pattern of deception that make them unworthy of equitable relief. Rather than being upfront with this Court, the Defendants act deceptively. First, Defendants initially disclosed only websites identified by Plaintiff in the Complaint in their declarations, Defendants have now admitted under oath to operating hundreds of undisclosed websites selling counterfeits. *See, e.g.*, **Exhibit 3** (Rule 30(b)(6) Dep. of Giske, 79:17-18 (Dec. 30, 2024) (admitting operation of ~100 websites)); **Exhibit 4** (Rule 30(b)(6) Dep. of Justen, 18:12-16 (Dec. 27, 2024) (admitting operation of over 300 websites)); **Exhibit 5** (Dep. of Yue Lin, 48:13-15 (Dec. 10, 2024) (admitting operation of 80 websites)). Yet Defendants still refuse to provide complete information about these operations or their associated revenue for fear of truthfully divulging the true scope of their illegal activity.

Most notably, Defendants' testimony in this case directly conflicts with declarations they have submitted in other federal courts regarding their corporate structures and operations. Corporate representatives in this case have testified under oath to having no knowledge of corporate representatives identified in other cases who filed declarations claiming to be the company's senior executives. *See* **Exhibit 6** ((Testimony Contradiction Chart) at 1 (Shenzhen Jiuan Yunchen representative denying knowledge of individual filing concurrent declaration as company's CEO)). This pattern of contradictions extends across multiple defendants, with representatives denying knowledge of both key personnel and service companies that, according to declarations filed in other courts, play integral roles in their operations. *Id*. at 2-5. These contradictions between sworn testimony and federal court declarations demonstrate Defendants' willingness to provide whatever statements they believe will benefit them in a particular case, regardless of truth.

Second, rather than operating independently as claimed, Defendants share key operational elements establishing that their counterfeit network operates under centralized control, including common reliance on Nan Hui Wei Du ("Nan Hui") for website services and Zhong Tou Guo Rong "Zhong Tou") for fulfillment. *See* Exhibit 2, 50:13-53:14; Exhibit 3, 92:23-24, 96:10-19; **Exhibit 7** (see each Defendant's Responses to Interrogatory No. 11); *see also, e.g.*, **Exhibit 8** (Rule 30(b)(6) Dep. of Jiuan, 30:3-17, 31:6-32:4, 41:8-17 (Dec. 11, 2024)); **Exhibit 9** (Rule 30(b)(6) Dep. of Justen, 27:9-28:6, 29:24-30:9; 39:21-40:9 (Dec. 13, 2024)).

Third, Defendants operate through shell companies with no physical business presence outside mainland China despite claiming Hong Kong incorporation; maintain no corporate bank accounts, instead relying exclusively on third-party payment processors; employ no direct logistics or shipping staff; and cannot produce basic business records expected of legitimate enterprises.

3

*See* **Exhibit 10** (Draft Rule 30(b)(6) Dep. of Amgo, 52:7-55:25 (Dec. 23, 2024))[2]. Their operations are deliberately structured to obscure their actual ownership and the flow of funds, with their corporate representatives unable to explain fundamental aspects of their supposed business operations during sworn testimony. *See, e.g.*, Exhibit 2, 16:6-17:2 (admitting no knowledge as to a company name listed on one of the company's managed Facebook accounts); **Exhibit 11** (Rule 30(b)(6) Dep. of Huipeng, 8:5-9:15 (Dec. 6, 2024) (admitting no knowledge as to whether the purported boss is the sole owner of the company)). These entities exist solely to obscure the flow of funds and facilitate rapid disappearance to avoid accountability for their illegal counterfeiting.

Fourth, Defendants spend millions of dollars on targeted U.S. advertising including the unauthorized use of SKECHERS Trademarks while claiming minimal U.S. contacts. Individual defendants admit to advertising budgets of $5-6 million in 2024 alone, *see* Exhibit 2, 20:6-10 yet attempt to minimize their connections to this forum. Every Defendant has admitted that their largest revenue source is U.S. consumers, with 1-5% of sales specifically from Illinois. *See* Exhibit 8, 57:1-8; Exhibit 9, 11:18-22, 12:7-19; Exhibit 10, 85:2-12; **Exhibit 12** (Rule 30(b)(6) Dep. of Huipeng, 16:18-17:3 (Dec. 26, 2024)); **Exhibit 13** (Rule 30(b)(6) Dep. of Jiangmao, 37:14-24 (Dec. 18, 2024)).

Fifth, Defendants employ fraudulent pricing practices, charging consumers additional "insurance" and "tax" that provide no actual coverage but generate pure profit. *See* Exhibit 10, 63:15-64:1, 75:14-21 (specifying that staff members can modify shipping and shipping insurance fees, but admitting that the shipping insurance is not real); Exhibit 11, 62:14-64:11; Exhibit 13, 41:2-42:15 (admitting Nan Hui system allows operators to set shipping and tax fees, both of which

---

[2] The corporate testimony referenced herein is from an uncertified rough draft of the deposition transcript. Counsel will supplement citations with references to the certified transcript once received. A notice of supplemental authority will be filed to provide precise page citations when the certified transcript becomes available.

4

go directly to Jiangmao). They obscure these practices through multiple undisclosed PayPal accounts and by funneling money through third-party providers. *See* Exhibit 2, 47:12-48:8 (identifying "Paianyin and "Kong Zhong Yun Hui" as third-party service providers connected to Giske's PayPal accounts); Exhibit 10, 52:7-55:25 (admitting use of self-owned company to pay for Amgo's payroll and transacting through two other third-party service providers"); Exhibit 13, 22:2-23:24 (disclosing use of three third-party service providers for payroll and payments to other third parties.); **Exhibit 14** (Dep. of Shu Tang, 32:11-34:20 (Dec. 3, 2024) (identifying two as third-party service providers used for payroll)).

These examples represent just a few instances from the extensive record of Defendants' deception; additional examples are available should the Court require further support or an evidentiary hearing. Now, having built their entire business model on counterfeiting and fraud, Defendants seek dismissal and modification of the asset restraint based on selective disclosures. Their Motion relies heavily on declarations that their own deposition testimony has contradicted regarding U.S. operations. The doctrine of unclean hands exists precisely to prevent parties like Defendants who engage in deceptive conduct from benefiting from the Court's equitable powers.

## ARGUMENT

### I. The Doctrine of Unclean Hands Bars Defendants' Request for Equitable Relief

The Supreme Court recognizes the "equitable maxim" that "[h]e who comes into equity must come with clean hands." This maxim bars equitable relief to parties who have engaged in misconduct directly related to the matter at hand. *See Precision Instrument Mfg. Co. v. Auto. Maint. Mach. Co.*, 324 U.S. 806, 814 (1945). Courts consistently deny equitable relief where parties have concealed material facts or provided misleading testimony. *See Scheiber v. Dolby Labs., Inc.*, 293 F.3d 1014, 1021 (7th Cir. 2002).

5

Defendants' systematic pattern of deception, detailed above, goes to the heart of their request for equitable relief under Fed. R. Civ. P. 65. They seek dismissal or modification of an asset restraint while actively concealing the scope of their operations and providing perjurious testimony about their activities. Courts have specifically held that "lying to the court in order to receive a benefit from it" warrants denial of equitable relief. *Sanders v. Melvin*, 25 F.4th 475, 481 (7th Cir. 2022). The demonstrated pattern of shell companies, undisclosed operations, and contradictory testimony makes Defendants unsuited for the equitable relief they now seek.

The Defendants lied about their contacts with the U.S., including Illinois, and the extent of their counterfeiting activities. Defendants are subject to the personal jurisdiction of this Court because they have engaged in extensive contacts with U.S. and Illinois consumers, including selling Counterfeit SKECHERS Products into this District. There is no unfairness in holding Defendants accountable in this District in light of their bait-and-switch sales tactics and deliberate advertising to U.S. and Illinois consumers. Likewise, this Court should deny Defendants' request to vacate or modify the preliminary injunction because their lack of credible and complete sales information does not meet their burden of presenting documentary proof that the frozen assets are not the proceeds of counterfeit sales. Additionally, this Court should reject Defendants' remaining arguments in opposition to the Preliminary Injunction [30]. Plaintiff has shown a likelihood of success on the merits and the risk of irreparable harm to Plaintiff has not changed. Accordingly, and for the reasons below, this Court should deny Defendants' Motion [71]. Alternatively, Plaintiff does not oppose Defendants' posting a reverse injunction bond in place of the frozen assets.

**II.     This Court Can Exercise Personal Jurisdiction Over the Defendants Because Each Defendant Directs its Business to U.S. Consumers, Including in Illinois, and Has Sold Counterfeit Products into this District**

Despite admitting that they each sold and shipped counterfeit SKECHERS products into Illinois (*see* Exhibit 7 at 6-7, 21-22, 36-37, 51-52, 66-67, 81-82, 96-97), Defendants argue that

Plaintiff cannot establish specific personal jurisdiction. *See* [71] at 2-3. However, the Seventh Circuit in *NBA Props., Inc. v HANWJH,* 46 F.4th 614 (7th Cir. 2022), has affirmed the exercise of personal jurisdiction over a foreign online retailer for a trademark infringement claim where the trademark owner purchased the only allegedly infringing article sold in the forum.

The defendant in *NBA Props.* put forth the same argument as Defendants here, namely that (1) operating a website is not sufficient on its own to establish personal jurisdiction, (2) a single transaction by the plaintiff cannot support the exercise of personal jurisdiction, and (3) that even if the exercise of personal jurisdiction were otherwise appropriate, such exercise would offend the traditional notions of fair play and substantial justice. *Id.* at 624-27. The Seventh Circuit rejected every argument, finding that allowing customers to order products from a website to the forum and then fulfilling the order to the forum can form the basis of personal jurisdiction – even if the only order to the forum was made by the plaintiff. The facts in *NBA Props.* apply to Defendants.

The following chart displays a few of the products Defendants have sold in connection with Plaintiff's SKECHERS Trademarks in Illinois:

| **Defendant** | **Declarants** | **Evidence of Product Sold to Illinois through Bait and Switch Tactics (*see* Exhibit 1)** | **Return Address on Shipping Label** |
|---|---|---|---|
| 1 Shenzhen Jiuan Yunchen Network Technology Co., Ltd. (owner and operator of anticipateh.com) | Yue Lin | | Sarah at 2165 Bloomingdale Road, Glendale Heights, 60139 |
| Nos. 6 and 12 Giske Network Technology Co., Limited (owner and operator of cafeteriam.com and haulinferen.com) | Shu Tang | | Sarah at 2164 Bloomingdale Road, Glendale Heights, Illinois 60139 |

| | | | |
|---|---|---|---|
| | | | |
| No. 14 Justen Trading Co., Limited (owner and operator of implicationi.com) | Xudong Huang | | Jack at 5220 Fashion Outlets Way, Rosemont Illinois 60018 |
| No. 95 Shenzhen Huipeng Network Technology Co., Ltd. | Xingyuan Jiang | | Heather Mottsy from 550 Middle Country Road, Coran, NY 1127 |
| No. 100 Amgo Technology Co., Limited (owner and operator of moissture.com) | Long Zhang | | N/A **Note:** Plaintiff never received this order but funds for the purchase were accepted and never refunded. |
| No. 101 Shenzhen Jiangmao Network Technology Co., Ltd. (owner and operator of signifye.com) | Congming Zhuang | | Yun, YunExpressUSA, Inc., 1055 Sesame St., Franklin Park, IL 60131 |

Here, Defendants purposefully directed their businesses toward Illinois and the United States by spending millions of dollars to launch product advertisements on the popular U.S. social media platform Facebook prominently featuring Plaintiff's SKECHERS Trademarks to lure U.S.

8

and Illinois consumers to their websites to purchase counterfeit SKECHERS Products and fulfilling those orders as shown above. *See* Exhibit 1; *see also* Page 4, *infra*. The Seventh Circuit's analysis in *NBA Props.* centers on whether defendants have "purposefully directed" their activities at the forum state. *Id.*, 46 F.4th at 623. The evidence already established – including sophisticated advertising campaigns, payment processing systems, and shipping infrastructure specifically designed to serve U.S. customers, along with at least one sale from each Defendant company – far exceeds the single sale found sufficient in *NBA Props*.

Defendants contend that a finding of personal jurisdiction would violate "traditional notions of fair play and substantial justice." *Int'l Shoe Co. v. State of Wash., Off. of Unemployment Comp. & Placement*, 326 U.S. 310, 316 (1945). Yet there is "no unfairness in making a seller defend a suit in a state where it structured its business to 'easily serve the state's consumers.'" *NBA Properties*, 46 F.4th at 627. Having invested millions in infrastructure targeting U.S. consumers, Defendants cannot now claim surprise at being hauled into U.S. courts.

Alternatively, should the Court find that specific personal jurisdiction in Illinois is lacking, personal jurisdiction over the Defendants under Fed. R. Civ. P. 4(k)(2) applies. This rule allows federal courts to assert personal jurisdiction in cases arising under federal law when a defendant's aggregate contacts with the U.S. as a whole are substantial, even if specific jurisdiction in any single state cannot be established. *See* Fed. R. Civ. P. 4(k)(2); *Central States, Se. & Sw. Areas Pension Fund v. Reimer Express World Corp.*, 230 F.3d 934, 946 (7th Cir. 2000); *ISI Int'l Inc. v. Borden Ladner Gervais llp,* 256 F.3d 548 (7th Cir. 2001). Here, Plaintiff's claims arise under federal trademark law, and Defendants have not shown they are subject to any state's general jurisdiction. Defendants' extensive activities of selling products to U.S. and Illinois consumers, advertising in English on U.S.-based social media platforms, and marketing and accepting

9

purchases in U.S. Dollars demonstrates purposeful availment of the privileges of conducting business within the U.S. and Illinois, justifying personal jurisdiction under Rule 4(k)(2).

Defendants' business activities in the U.S. and Illinois exceed the threshold of sufficient minimum contacts with Illinois to satisfy personal jurisdiction. Exercising jurisdiction in this case, therefore, is fair and consistent with due process principles. Accordingly, this Court should find that personal jurisdiction over all Defendants and deny Defendants' Motion to Dismiss [71].

**III. This Court Should Deny Defendants' Request to Modify or Vacate the Preliminary Injunction as Defendants Have Failed to Meet Their Burden for Modifying the Asset Restraint.**

Defendants' request to modify the asset restraint rests entirely on their claim that they have provided "sufficient evidence" of their counterfeit sales through "complete and accurate sales records." [Dkt 71] at 8-9. This argument fails for four reasons. First, under *Monster Energy*, the burden falls squarely on Defendants to "present documentary proof that particular assets are not the proceeds of counterfeiting activities." *Monster Energy Co. v. Chen Wensheng et al.*, 136 F. Supp. 3d 897, 910 (N.D. Ill 2015). Here, Defendants' declarations fail to establish that frozen the amounts were not the proceeds of counterfeiting activities. Second, Defendants' admissions about their hundreds of undisclosed websites and multiple undisclosed PayPal accounts, for which the Defendants have intentionally presented no further evidence of to the Court, demonstrate that their alleged "diligent" search of records was anything but. Third, each Defendant's claim of one sale into Illinois is inconsistent with later representations about sales into Illinois and fails to explain why it would make economic sense to spend millions of dollars in advertising for such low sales.

    a. <u>Defendants Failed to Provide Credible and Complete Sales Information Demonstrating that the Restrained Funds Are Not the Proceeds of Counterfeiting Activities</u>

Under *Monster Energy*, the burden falls squarely on Defendants to "present documentary proof that particular assets are not the proceeds of counterfeiting activities." *Id.*, 136 F. Supp. 3d

10

at 910 (N.D. Ill 2015). Courts in this District consistently emphasize that "it is [defendant's] burden to come up with something that shows the Court that the universe of potential counterfeiting profits is less than what is currently frozen." *Johnson & Johnson v. Advanced Inventory Mgmt.*, No. 20-cv-3471, 2020 U.S. Dist. LEXIS 248831, at *8 (N.D. Ill. July 20, 2020); *see also Entertainment One UK Ltd. v. 2012Shiliang*, 384 F. Supp. 3d 941, 954 (N.D. Ill. 2019) (disregarding as incredible defendant's statement that the counterfeit product purchased by an investigator just happened to be the only one they ever sold); *Monster Energy Co.*, 136 F. Supp. 3d at 910 (refusing to modify asset freeze due to lack of "any evidence regarding their PayPal account transactions to show that these funds are not the proceeds of counterfeiting activities").

The law does not and cannot permit funds to be released to high-volume, multi-platform counterfeiters who have consistently sought to obscure the full extent of their counterfeiting activities. Indeed, the Seventh Circuit has held that "a dismissal with prejudice is an appropriate sanction for lying to the court in order to receive a benefit from it, because no one needs to be warned not to lie to the judiciary." *See Sanders* 25 F.4th at 481; *Rosa v. Board of Trustees of University of Illinois*, No. 18-cv-8477, 2024 WL 4800764, at *7-8 (N.D. Ill. Oct. 9, 2024); *see also Rivera v. Drake*, 767 F3d 685, 686 (7th Cir. 2014) (noting that Perjury is "among the worst kinds of misconduct."). Here, during deposition testimony, Defendants admitted to operating hundreds of websites (*see* page 2, *infra*), yet they only disclosed less than two dozen websites in their filed declarations and their responses for Plaintiff's first set of interrogatories. *See* Exhibit 7 (see each Defendant's Responses to Interrogatory No. 1). Defendants' selective disclosure of only those websites already discovered by Plaintiff, while admitting in depositions to operating hundreds more, demonstrates their ongoing attempt to mislead the Court about the true scope of their operations and evade accountability for their criminal counterfeiting. Plaintiff still has not received

11

a full list of all Defendants' websites, yet to mention any information regarding searches or investigations into counterfeit SKECHERS products which were sold on these other undisclosed websites, nor about the additional PayPal accounts that the Defendants also admitted to using in connection with their websites which have not been restrained in this case. *See* Exhibit 3, 75:3:-19, 79:17-18 (disclosing use of four PayPal accounts and operation of around 100 websites); Exhibit 4, 33:19-21, 18:12-16 (disclosing use of three PayPal accounts and operation of over 300 websites); Exhibit 10, 65:20-21, 66:4-67:10 (disclosing use of five PayPal accounts across 35 websites); Exhibit 12, 6:6-8, 8:5-7 (disclosing use of three PayPal accounts across 30 websites).

Defendants allocate millions of dollars each year towards marketing and advertising (see page 4, *infra*), but have never provided a complete record of all Facebook accounts they operate in connection with their websites. Defendants' declarations were completely silent on their unauthorized use of the SKECHERS Trademarks on advertisements for counterfeit shoes, and, when given the chance to disclose an accurate number of Facebook accounts used in connection with each website discovered by Plaintiff, merely provided one Facebook account, if any, for each website disclosed in their responses to Interrogatory No. 1. *See* Exhibit 7. The Facebook Ad library summaries attached as **Exhibit 15** shows that each Defendant website discovered by Plaintiff uses at least 1-5 different Facebook accounts to run advertisements for their website. Notably, some Defendant Facebook pages displayed the names of other companies which Defendants have not offered a full explanation for, further raising into doubt any of Defendants' representations about their identities and company affiliations. *See, e.g.,* Exhibit 2, 14:8-17:2; Exhibit 12, 19:14-20:11. These discrepancies, in addition to the Defendants' parallel reliance on Nan Hui and Zhong Tou further undermine each Defendant's sworn representation of purportedly being an independent business entity which makes its business decisions independently.

Furthermore, each Defendant's Exhibit B to their filed declaration shows the back end of their website supported by Nan Hui, which Defendants claimed to have diligently searched for accused products. Defendants' search consisted of a keyword search of terms contained in the Accused Product listings, however, Defendants have admitted that such keyword search on the back end of their website would not allow one to search and find SKECHERS Trademarks used on marketing materials. *See* Exhibit 3, 85:7-18; Exhibit 4, 22:15-25:3. Further, despite claims of "independence," it appears Nan Hui is the control center of the operation. Notably absent is any sworn declaration from this mysterious entity that Defendants claim to speak on its behalf detailing the extent of the illegal profits generated by this entity. Defendants' search methods and evidence of their search are, thus, intentionally deceitful in that the investigation only focused narrowly on the websites discovered by Plaintiff, rather than all websites operated by Defendants which generated millions in sales to U.S. and Illinois consumers through fake SKECHERS ads.

Plaintiff is entitled to a full accounting of all profits Defendants received from the sales of Counterfeit SKECHERS Trademarks across all of Defendants' websites and PayPal accounts, not just those which were generated through the websites Plaintiff originally identified or through the PayPal accounts currently subject to the Preliminary Injunction Order. *Johnson & Johnson,* 2020 U.S. Dist. LEXIS 248831, at *11. The current picture represents only a small fraction of the large and mysterious counterfeiting network that Defendants operate. Defendants' unsupported and perjurious statements about their counterfeit sales activity do not compare to the information provided by the defendant in *Peanuts Worldwide, LLC v. Yingsheji Jiatingyongpinyouxiangongsi, et al.,* No. 21-cv-05863 (N.D. Ill., Jan. 24, 2022). In *Peanuts*, the court granted a preliminary injunction against the defendant without freezing its assets only because it found that the defendant had "provided adequate documentary proof" showing its assets were "unrelated to the infringing

13

activity at issue." *Id.* Specifically, the defendant provided "a declaration from a corporate representative attesting to the numbers in a spreadsheet listing sales figures for all the products offered for sale by its Amazon seller account," as well as "pictures of products to demonstrate that none of the other products it offered for sale infringed Plaintiff's trademarks or copyrights." *Id.; see also Monster Energy Co.* 136 F. Supp. 3d at 910.

Here, the PayPal transaction logs that Defendants' have disclosed do not provide any picture proof to help identify whether an Accused Product was sold under a different title but still used in connection with a fake SKECHERS ad and are filled with "n/a" entries that may represent other undisclosed counterfeit sales or the funneling of funds through other PayPal accounts which also generate revenue from sales of counterfeit product. This lack of complete information and the numerous discrepancies in the sworn declarations cannot support a modification to the asset restraint in this case. Any modification to the current asset restraint would be improper and would prejudice the defendant because Defendants have not shown the Court that the universe of potential counterfeiting profits is less than what is currently frozen. Defendants' shell infrastructure and layers of untrue statements further underscore the need to maintain the current restraint in place to prevent Defendants from disappearing from this case and to hold these Defendants accountable.

  b. <u>The Risk of Irreparable Harm and the Balance of Harms Has Not Changed and Continues to Favor Plaintiff</u>

The factual basis for the preliminary injunction remains unchanged. Defendants' deceptive use of Plaintiff's SKECHERS Trademarks in connection with the sale of counterfeit SKECHERS products harms Plaintiff's brand and the public. Defendants' promotion of low-quality counterfeits creates negative associations with Plaintiff's authentic products, amplified by the hundreds of thousands of views their fake SKECHERS ads have attracted. *See* Exhibit 1. Plaintiff's Expert Jonathan Cranin previously estimated that Skechers will need to budget at least $11,604,000 in

corrective advertising to undo the damage Defendants' have caused in the U.S. alone. *See* [74-7] (Expert Report of Jonathan Cranin) at pp. 4-6, 33.

Defendants' claim that there's "little likelihood of recurrence" rings hollow given their sophisticated financial infrastructure designed to facilitate rapid dissipation of assets. Their use of multiple undisclosed PayPal accounts and funneling of money through various third-party providers, including one owned by a declarant themselves, demonstrates their ability to quickly move assets beyond the Court's reach. Without the asset restraint, Defendants have no incentive to move forward with this matter. Moreover, any modification would prevent Plaintiff from realizing its right to final equitable relief through an accounting of profits or statutory damages. The balance of harms thus continues to favor maintaining the current restraint.

## CONCLUSION

Defendants come to this Court seeking equitable relief while continuing to perpetrate a massive scheme of counterfeiting, deception, and concealment. Their Motion rests entirely on selective disclosures that their own testimony has contradicted, made through declarations that omit hundreds of websites and multiple PayPal accounts used to sell counterfeit goods. The law is clear – parties who engage in such systematic deception cannot benefit from the Court's equitable powers. Defendants' sophisticated infrastructure of shell companies, undisclosed accounts, and third-party payment processors demonstrates both their extensive contacts with this forum and their ability to rapidly disappear if the asset restraint is modified. The current restraint must remain in place to ensure these sophisticated counterfeiters do not escape accountability for their deliberate exploitation of Plaintiff's intellectual property rights and deception of U.S. consumers.

For these reasons, this Court should deny Defendants Motion [71]. Alternatively, Plaintiff does not oppose Defendants posting a reverse injunction bond in place of the restrained assets.

15

DATED: January 8, 2025                      Respectfully submitted,

*/s/ Keith A. Vogt*
Keith A. Vogt (Bar No. 6207971)
Keith Vogt, Ltd.
33 West Jackson Boulevard, #2W
Chicago, Illinois 60604
Telephone: 312-971-6752
E-mail: keith@vogtip.com

***ATTORNEY FOR PLAINTIFF***

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that a true and correct copy of the above and foregoing document was electronically filed on January 8, 2025 with the Clerk of the Court using the CM/ECF system, which will automatically send an email notification of such filing to all registered attorneys of record.

*/s/ Keith A. Vogt*
Keith A. Vogt