UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| SKECHERS U.S.A., INC. II, | |
| Plaintiff | No. 24 CV 596 |
| v. | Judge Jeremy C. Daniel |
| THE PARTNERSHIPS AND UNINCORPORATED ASSOCIATIONS *d/b/a* THE INTERNET STORES IDENTIFIED ON SCHEDULE A | |
| Defendants | |

**ORDER**

The defendant's motion to dismiss, or in the alternative, to modify the asset restraint, [71, 72] is denied in part and granted in part. The motion to dismiss is denied; the motion to modify the asset restraint is granted. On or before March 20, 2025, the plaintiff must identify the extent to which currently restrained assets are traceable to sales of the accused products. After receiving that information, the Court will enter an amended preliminary injunction order.

**STATEMENT**

Skechers U.S.A., Inc. II ("Skechers") brings this trademark infringement action against 133 defendants operating the websites listed in Schedule A of the complaint. (R. 1; R. 2.)[1] Skechers alleges that the defendants sell counterfeit products that infringe its trademarks. (*Id*.) The Court granted Skechers' request for a temporary restraining order ("TRO") which included an asset restraint, restraining defendants from selling infringing products and from transferring assets, including money, out of their financial accounts. (R. 20; R. 21 at 4.) The TRO was later converted into a preliminary injunction. (R. 30.)

Now, six of the companies who operate a subset of the websites listed in Schedule A move to dismiss this case against them for lack of jurisdiction, or in the alternative,

---

[1] For ECF filings, the Court cites to the page number(s) set forth in the document's ECF header unless citing to a particular paragraph or other page designation is more appropriate.

to reduce the asset restraint to match their actual sales of the accused products. (R. 71.) The moving defendants are: Shenzhen Jiuan Yunchen Network Technology Co., Ltd. ("Jiuan"), Giske Network Technology Co., Limited ("Giske"), Justen Trading Co., Limited ("Justen"), Shenzhen Huipeng Network Technology Co., Ltd. ("Huipeng"), Amgo Technology Co., Limited ("Amgo"), and Shenzhen Jiangmao Network Technology Co., Ltd. ("Jiangmao"). (*Id.*)

The Court begins with jurisdiction. *See Progressive Express Ins. Co. v. Harry's Truck Serv., LLC*, 688 F. Supp. 3d 773, 778 (N.D. Ill. 2023) ("In every case, the first task of a federal court is to ensure that it has jurisdiction."). The defendants argue that their only sales in Illinois are the "test" purchases of the allegedly counterfeit products by Skechers' counsel, plus a pair of additional sales by Huipeng. (R. 71 at 5.) This, they argue, is insufficient to establish jurisdiction. (*Id.*) But the law of this circuit says otherwise. In a case with analogous facts as here, the Seventh Circuit found jurisdiction was proper over an online retailer who's only in-district sale was a pair of shorts to the plaintiff's investigator. *NBA Properties, Inc. v. HANWJH*, 46 F.4th 614, 627 (7th Cir. 2022). The defendant "availed itself of the Illinois market in offering and shipping a product to the forum. Because of this purposeful direction, and because these contacts are related to the suit, it [the defendant] is subject to jurisdiction in Illinois." *Id.* The same logic applies to the moving defendants here. Accordingly, the motion to dismiss for a lack of jurisdiction is denied.

The Court next turns to the asset restraint. The defendants move to modify the asset restrain to "align with [the d]efendants' actual sales figures." (R. 170 at 2.) In response, the plaintiff argues that several district courts have held that modifying an asset restraint requires the moving party to show that the restrained assets are not the proceeds of counterfeiting. *See Delta Tech. Dev. LLC v. BIGJOYS*, No. 24 C 2406, 2024 WL 3755929, at *6 (N.D. Ill. Aug. 12, 2024) ("*BIGJOY*"); *Luxottica USA LLC v. The P'ships & Unincorporated Ass'ns Identified On Schedule "A"*, No. 14 C 9061, 2015 WL 3818622, at *5 (N.D. Ill. June 18, 2015) ("*Luxottica*"). According to those cases, the moving party bears the burden to put reliable evidence before the Court as to the source of the restrained assets. *See, e.g.*, *BIGJOYS*, 2024 WL 3755929, at *7 (concluding the movant had failed to meet its burden to support modifying asset restraint due to unreliable evidence); *Luxottica*, 2015 WL 3818622, at *5 (declining motion to modify asset restraint due to the lack of "authenticity and validity" of the movant's evidence).

To make the required showings under those cases, each defendant submitted a declaration stating the number of accused products it sold through its respective associated website. (R. 71-1; 71-2; 71-3; 71-4; 71-5; 71-6.) Sketchers challenges the accuracy of these declarations. For example, Defendant Giske submitted the declaration of Shu Tang, who also served as Giske's Rule 30(b)(6) deponent. (R. 71-2; R. 168-2.) Sketchers identifies several areas where Tang's testimony is inconsistent with statements by other Giske declarants in other proceedings. For instance, Tang

2

is not familiar with Giske's Chief Marketing Officer ("CMO"), nor with Giske subsidiaries Mind E-Commerce or Husdow Technology Corporation. (Dkt. 168-6 at 13–37 (comparing Tang's deposition testimony that he did not know a "Lin Zhang" with declarations by Lin Zhang asserting her role as Giske's CMO and asserting Giske's ownership of Mind E-Commerce and Husdow Technology Corporation.))

Tang's lack of knowledge of Giske's operations casts doubt on the credibility of his assertion that Giske has only sold one pair of accused shoes. Furthermore, the Court notes that the product listing attached to Tang's declaration has ten reviews and states the product has been recommended "by 6.19k people on Facebook." (R. 71-2 at 5.) It seems unlikely that a product would have ten times as many reviews as sales, let alone six thousand likes. In light of these inconsistencies and Tang's lack of preparation as a 30(b)(6) deponent, the Court does not credit his assertion that Giske has only ever sold one pair of the accused shoe.

The credibility problems are similar for the other five moving defendants. The 30(b)(6) deponent for Defendant Jiuan, Yue Lin, was unfamiliar with the CEO of the company. (168-6 at 3–12.) And Lin's declaration reported only one sale of an accused product, yet Jiuan's listing has 42 reviews and states "1.1K Sold." (R. 71-1 at 5, 10.) Congming Zhuang, the deponent and declarant for Defendant Jiangmao, reports one sale, but was unfamiliar with a company where they were allegedly Chief Marketing Officer, (R. 168-6 at 38–47), and the listing accompanying their declaration states "770 month (sic) sold." (R. 71-6 at 6.) The listing submitted alongside the declaration of Xingyuan Jiang for Defendant Huipeng lists "19.3k sold" (R. 71-4 at 9), and Jiang testified that 40% of Huipeng's sales come from within the United States, (R. 168-12 at 16:12–14.) For Defendant Amgo, the listing states "3.6K month (sic) sold." (R. 71-5 at 5.) Last, Xudong Huang testified that in 2024, Defendant Justen had Illinois sales of approximately $900,000. (R. 168-9 at 11:18–12:19 (testifying to sales of nine million dollars, of which 10% were in Illinois).)

Even so, the Court cannot ignore the manner in which the preliminary injunction came about. The plaintiff filed its complaint against 133 defendants on January 23, 2024. (R. 1 and R. 2.) In February 2024, the plaintiff sought and obtained an *ex parte* temporary restraining order. (R. 16 and R. 21.) That TRO included an asset restraint that prevented the transfer or disposition of any money or other of Defendants' assets in any of Defendants' financial accounts." (R. 21 at 5.) The Court subsequently granted the plaintiff's motion to extend the TRO. (R. 23 and R. 29.) On February 27, 2024, the Court granted the plaintiff's motion for a preliminary injunction. (R. 30.)

Having had the benefit of the adversarial process in this case, and having reflected on the propriety of asset restraints in "Schedule A" cases generally, the Court finds that the restraint of "any money or other of Defendants' assets" is overly broad. District courts have no authority to restrain assets pending adjudication of a claim for money damages. *Grupo Mexicano de Desarrollo S.A. v. All. Bond Fund, Inc.*, 527

U.S. 308, 333 (1999). However, district courts may restrain assets where a party seeks equitable relief. *See, e.g., CSC Holdings, Inc. v. Redisi*, 309 F.3d 988, 996 (7th Cir. 2002) (explaining that, in *Grupo*, "the court specifically noted that a restraint on assets was still proper if a suit sought equitable relief."). In short, an asset freeze may be appropriate where the assets in question are the defendant's profits and the law permits the plaintiff to obtain the defendant's profits as a remedy. *Id.*

Under the Lanham Act, a plaintiff may recover the defendant's profits, any damages sustained by the plaintiff, and the costs of the action. 15 U.S.C. § 1117(a). Accordingly, an asset restraint as to the defendant's profits could be appropriate—provided the plaintiff established that the assets to be restrained were the defendant's profits from sales of the accused products. To date, the plaintiff has not shown that to be the case.

Instead, the plaintiff relies on the posture of the case, which includes an asset restraint entered "in the absence of adversarial presentation," (*see* R. 21 at 1), and district courts that have held that modifying an asset restraint requires the moving party to show that the restrained assets are not the proceeds of counterfeiting. I view this burden-shifting as fundamentally unfair when the plaintiff obtained the asset restraint independent of the adversarial process.

When it obtained a temporary restraining order, the plaintiff received the authority to obtain expedited discovery from the online marketplace platforms used by the defendants. Those platforms can provide the plaintiff with information concerning the defendants' sales of the accused products. Had the plaintiff established that the restrained assets were traceable to sales of the accused products in the first instance, then yes, the defendant would have to meet that showing with its own evidence.

But the plaintiff has made no such showing. Accordingly, the plaintiff has until March 20, 2025, to do so. If it does, then, together with the information submitted by the defendants' in support of their motion to modify the asset restraint, the Court will amend its preliminary injunction order to tie the amount of the asset restraint to the defendants' profits from sales of the accused products.

Date: March 10, 2025

                                                   JEREMY C. DANIEL
                                                   United States District Judge